UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY LYNN SLUYTER,

                Plaintiff,          Case No. 18-13938
                                                      Honorable Mark A. Goldsmith
                                                      Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 13]**

Plaintiff Tracy Lynn Sluyter ("Sluyter") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 10, 13) that have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED**, Sluyter's Motion for Summary Judgment **(ECF No. 10)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

**II.    REPORT**

    **A.    Procedural History**

On August 11, 2015, Sluyter filed an application for SSI benefits, alleging disability beginning on October 31, 2014. (Tr. 353, 367). About a month later, on September 11, 2015,

Sluyter filed an application for DIB under Title II. (Tr. 339, 366). Sluyter's applications for DIB and SSI were both denied on February 2, 2016. (Tr. 366, 367). Thereafter, Sluyter filed a timely request for an administrative hearing, which was held on August 23, 2017, before ALJ Amy L. Rosenberg. Sluyter, who was not represented by an attorney at her hearing, testified as did vocational expert ("VE") Norman Ables and Sluyter's mother, Connie Sluyter. On April 13, 2018, the ALJ issued a written decision holding that Sluyter was not disabled. (Tr. 249-266). Sluyter retained an attorney and submitted additional evidence after the hearing for the Appeals Council's consideration. (Tr. 8-244). On November 5, 2018, the Appeals Council denied review, finding that the additional evidence proffered by Sluyter was not new and material under 42 U.S.C. § 405(g). (Tr. 1-6). Sluyter filed for judicial review of the final decision on December 18, 2018. (ECF No. 1.)

    **B.**     **Background**

        *1.*     *Sluyter's Testimony*

At the time of the hearing, Sluyter was five feet six inches tall and weighed 210 pounds. She testified to recurrent back problems dating back to 2011, including two surgeries, a rhizotomy[1] and the implantation of a spinal cord stimulator. She stated that she has difficulty driving because it is painful to sit. She can only drive a half hour before taking a break, and has to use ice packs to control pain. Sluyter attended two years of college and earned a Michigan Department of Corrections certificate. She had accommodations for the classroom, such as the ability to stand when needed, and used a wheelchair to cross the stage at graduation. She also has difficulty climbing stairs. She testified that her mother comes to her house and helps with

---

[1] A rhizotomy is a procedure where a doctor inserts a needle to the affected facet joint and sends an electrical current through the needle to stun or kill the nerve endings, blocking the pain in the joint. https://www.cure-back-pain.org/facet-rhizotomy.html.

2

cleaning and caring for her five-year old daughter.

Sluyter testified that she cannot stand more than 15-20 minutes a day. (Tr. 314, 316). She can only walk 15-20 minutes a day. (Tr. 315). She uses a walker sporadically for flare-ups and a shower chair all the time because sometimes her left leg gives out. (*Id*.). At the time of the hearing, she had a spinal cord stimulator in her back that was not providing any relief. (Tr. 317). She stated that she has had numerous surgeries, medications and steroid injections, yet still suffers from back pain. (Tr. 324).

2. *Medical Evidence*

The transcript for this case is 1,853 pages. The Court has thoroughly reviewed the transcript in this matter, but only briefly summarizes it here. The Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments. Most of the medical record addresses Sluyter's herniated discs and degenerative disc disease, and the procedures and medications attempted to reduce her pain.

*(a)    Evidence submitted before the administrative hearing*

The approximately 650 pages of medical records that were before the ALJ at the time of the hearing confirm that Sluyter had ongoing back problems that started as far back as 2011. Indeed, she had a lumbar discectomy on May 16, 2011, and another one on December 17, 2013. (Tr. 607-610). In 2015, Sluyter also underwent a series of injections in an effort to eliminate her back pain. (Tr. 634-37). She also had a bilateral lumbar facet rhizotomy with radiofrequency ablation. (*Id.*). With all these interventions, her pain would decrease for a few weeks and then return. (*See id*.). Included in these records is a statement of functionality from Sluyter's primary care doctor, Cheryl Elfring, D.O. (Tr. 626-27). Dr. Elfring opined that Sluyter will be unable to work at any job for the rest of her life. (Tr. 626). She also opined that Sluyter can stand or walk

3

less than two hours in an eight-hour workday, and sit less than six hours in an eight hour workday. (*Id.*). She also opined that Sluyter can "occasionally" (1/3 of an 8-hour day) lift less than 10 pounds, but could never lift 10 pounds or more. (*Id.*). Finally, Dr. Elfring opined that Sluyter would not need assistance with a slew of activities of daily living, including, eating, bathing, dressing, mobility, meal preparation, shopping, laundry, and housework. (Tr. 627).

*(b) Evidence developed by the ALJ post-hearing*

As ALJ Rosenberg noted in her written decision, "[d]uring the hearing, [Sluyter] notified [her] of additional medical records," and the ALJ sought out those records, ultimately adding about 800 pages of additional evidence to the transcript. (Tr. 252).

*(c) Sluyter's evidence submitted at the AC level*

Through an attorney retained after her hearing, Sluyter submitted a little over 200 more pages of medical documentation, dated from May 5, 2017 through April 19, 2018. (Tr. 8-242). These records were largely additional records from medical providers that had supplied records previously including: McLaren of Greater Lansing; Sparrow Hospital and Pain Center; K-13 Physical Therapy; Dr. Barbara L. Merrill, D.O.; Dr. Michael Winklepleck D.O.; Haslett Primary Care; and Henry Ford Health System.

**C.     Framework for Disability Determinations**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be

4

determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Sluyter was not disabled under the Act. At Step One, the ALJ found that Sluyter had not engaged in substantial gainful activity since October 31, 2014, her alleged onset date. (Tr. 255) At Step Two, the ALJ found that Sluyter had the following severe impairments: degenerative disc disease; obesity; migraine headaches; obstructive sleep apnea; and episodic sinus tachycardia. (*Id.*). At Step Three, the ALJ found that Sluyter's impairments did not meet or medically equal Listings 1.04 (spine

5

disorders), 4.05 (cardiovascular), 1.00Q (obesity/musculoskeletal), 3.00I (obesity/respiratory), 4.00F (obesity/cardiovascular), 3.09 (chronic pulmonary hypertension), 4.02 (chronic heart failure), or 12.02 (disturbances in mood, cognition and behavior). (Tr. 258).

The ALJ then assessed Sluyter's residual functional capacity ("RFC"), concluding that she was capable of performing sedentary work, as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), with the following additional limitations: she can occasionally climb ramps and stairs, but not more than a few stairs at a time; she cannot climb ladders, ropes or scaffolds; she can only occasionally balance, stoop, kneel, crouch, or crawl; she can only occasionally reach overhead; she cannot work at unprotected heights and cannot operate dangerous machinery; and she is limited to simple, routine tasks and simple work-related decisions due to pain and medications. (Tr. 258-263).

At Step Four, the ALJ determined that Sluyter was unable to perform her past relevant work as an assembler, receptionist, file clerk, kitchen aide, or machine folder. (Tr. 263-64). At Step Five, the ALJ concluded, based in part on Vocational Expert Norman Ables' testimony, that Sluyter was capable of performing a significant number of jobs that exist in the national economy, including document preparer, inspector, and surveillance system monitor. (Tr. 263-65). As a result, the ALJ concluded that Sluyter was not disabled under the Act. (Tr. 265).

E. **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

    **F.**    **Analysis**

Sluyter presents two arguments in support of her request that this matter be remanded to the ALJ for further proceedings, neither of which substantively challenges any aspect of the ALJ's analysis of her claim. First, Sluyter argues that the ALJ erred in failing to properly develop the record given that she was not represented by counsel at the administrative hearing. Second, Sluyter argues that remand under sentence six of 42 U.S.C. § 405(g) is appropriate so that the ALJ can consider the additional evidence she submitted (with the assistance of counsel) after the ALJ issued her decision. Neither argument is persuasive.

    *1.*    *The ALJ Adequately Developed the Record*

While the claimant bears the ultimate burden of establishing that she is entitled to disability benefits, courts have recognized that social security proceedings are "inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). As a result, an ALJ has an affirmative duty to develop the factual record upon which her decision rests, regardless of whether the claimant is represented by legal counsel at the administrative hearing. *See Lashley v. Secretary of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971) (recognizing that the responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge)).

However, where the claimant is without counsel, incapable of presenting an effective case, and unfamiliar with hearing procedures, the ALJ has a "special, heightened duty" to develop the administrative record and ensure a fair hearing. *See Wilson v. Commissioner of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley*, 708 F.2d at 1051-52); *Nabours v. Commissioner of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 1986). To satisfy this duty, the ALJ

must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (internal citations omitted).

Whether an ALJ has satisfied this "special, heightened duty" to develop the record is determined on a case-by-case basis. *See Osburn v. Apfel*, 1999 WL 503528, at *7 (6th Cir. July 9, 1999) (internal citation omitted). Although there is no bright line test to be applied, courts have recognized that, "[f]ailure by an ALJ to fully develop the factual record in a particular matter is often evidenced by superficial or perfunctory questioning, as well as a *failure to obtain all available medical records and documentation.*" *Vaca v. Commissioner of Soc. Sec.*, 2010 WL 821656, at * 6 (W.D. Mich. Mar. 4, 2010) (emphasis added) (citing cases). Indeed, courts have explicitly stated: "An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Figard v. Commissioner of Soc. Sec.,* 2010 WL 3891211, at *7 (W.D. Mich. July 1, 2010) (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996)).

Although Sluyter was represented by counsel when she filed her claim for benefits, she appeared at the hearing before the ALJ representing herself. As a result, the ALJ discussed with Sluyter her rights to proceed with or without an attorney:

> Q. You do have the right obviously to be represented in this proceeding [by counsel] . . . They can help make sure the record is complete, and we have all the relevant medical records in evidence . . .
>
> Q. You do have the right to proceed without a representative as well, and many claimants do proceed without a representative. As the judge presiding over the case, I have to make sure a claimant's due process rights are protected, whether or not they're represented.
>
> And we do try to give particular help to unrepresented claimants. So for example ***if there are additional treatment records that still need to be ordered and added to the file, we typically do that for the unrepresented claimants.***

9

> We'd have our staff order them after the hearing. It's my obligation to make sure that I have a complete record, that I can make a fair decision based on all the available relevant information. So do you understand your rights to representation?
>
> A. I do.

(Tr. 278-80).

The ALJ indicated, "if we do proceed today, I'll end up getting all the information from you about where we should be ordering records from." (Tr. 280). Sluyter decided to proceed without an attorney, and later during the hearing, she and the ALJ discussed the various providers from whom additional records should be ordered. (Tr. 305-314). As indicated above, it appears that prior to issuing her decision, the ALJ did, in fact, order and add more than 800 additional pages of medical records to the transcript. (Tr. 272-73, 981-1837). Sluyter now argues that the ALJ's efforts were insufficient because the record supposedly "did not have any statements of her functionality at the Hearing." (ECF No. 10-1, PageID.1890.) This argument lacks merit.

First, as the Commissioner persuasively argues, "the ALJ had no special duty to develop the record here." (ECF No. 13, PageID.1906.) An "ALJ has a special, heightened duty to develop the record" only where "a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Here, although Sluyter was without counsel at the hearing, the record makes clear that she was capable of presenting an effective case and sufficiently familiar with the hearing proceedings such that no special duty to develop the record existed. Sluyter stated that she understood her right to be represented by counsel, but that she "knows best what's going on with me" and that she was there "to tell you the truth" about her conditions and

10

treatment. (Tr. 280). She also signed a written waiver confirming her desire to proceed without counsel. (Tr. 465). Sluyter, now represented by counsel, does not contest the ALJ's finding that she has no severe mental impairments, and no limitation in her ability to understand, remember, or apply information. (Tr. 256). A review of the hearing transcript shows that she was able to understand the ALJ's questions about her impairments and treatment, and provide answers responsive to those questions. And, as the ALJ noted, Sluyter had recently been enrolled as a full-time student. (Tr. 290-91). For all of these reasons, the Court concurs with the Commissioner that no special duty to develop the record existed. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1172 (6th Cir. 1990); *Wilson*, 280 F. App'x at 459.[2]

Second, Sluyter's argument that the record lacked "any statements" of her functional abilities is both inaccurate and flawed. (ECF No. 13, PageID.1912.) The record contained the September 3, 2015 opinion of her primary care doctor, Dr. Elfring. (Tr. 626-27). Dr. Elfring opined that Sluyter can stand or walk less than two hours in an eight-hour workday, and sit less than six hours in an eight hour workday. (Tr. 626) She also opined that Sluyter can "occasionally" (1/3 of an 8-hour day) lift less than 10 pounds, but could never lift 10 pounds or

---

[2] One related issue raised by Sluyter is worth further discussion. Sluyter notes that, "The end of the hearing concluded with hypothetical questions to a vocational expert that indicated a response that such a claimant would be unable to work. A claimant with no experience might take that as an indication she had been successful at the hearing." (ECF No. 10-1, PageID.1887). A review of the transcript suggests that Sluyter may have put undue emphasis on the last portion of the VE's testimony – about a hypothetical claimant with the most extreme limitations – rather than on the VE's earlier testimony about a hypothetical claimant with lesser limitations (i.e., those ultimately adopted by the ALJ). After the VE's testimony concluded, the ALJ asked Sluyter, "Do you want any explanation about the things that I was asking, or the answers that [the VE] was giving?" to which Sluyter responded, "He's basically saying that there's no job that I can really perform that's going to allow me with my restrictions . . ." (Tr. 335). The problem for Sluyter, however, is that even if she misunderstood this aspect of the VE's testimony, she has not shown that the misunderstanding impacted the hearing's overall fairness. The ALJ still obtained more than 800 additional pages of medical evidence from Sluyter's medical providers, and, as discussed below, she has not shown (or even argued) that any aspect of the ALJ's substantive analysis of the evidence is flawed.

11

more. (*Id.*) Finally, Dr. Elfring opined that Sluyter would not need assistance with a slew of activities of daily living, including, eating, bathing, dressing, mobility, meal preparation, shopping, laundry, and housework. (Tr. 627).

The ALJ specifically addressed Dr. Elfring's opinion in her decision, giving it "partial weight," but also obtained and exhibited additional records from Dr. Elfring's medical practice, Capital Internal Medicine Associates, P.C. ("CIMA"), before rendering that decision. (Tr. 263, 681-726) Although the ALJ's analysis of Dr. Elfring's opinion could have been more thorough and pointed – the ALJ's main reasoning for discounting the opinion is that its "basis . . . is unclear" in certain respects – Sluyter, now represented by counsel, does not challenge that decision.[3] Moreover, earlier in her decision ALJ Rosenberg discussed a plethora of evidence that was inconsistent with the extreme limitations imposed by Dr. Elfring. For example, the ALJ noted that following her May 2016 surgery, "she reported her pain was under control and was ambulating independently." (Tr. 261, 1195 ("pain now controlled")). The ALJ noted that at a subsequent follow-up appointment, Sluyter "had independent ambulation, full range of motion . . . [and] her motion examination was intact . . ." (Tr. 261, 986-87). The ALJ noted that Sluyter then had a spinal cord stimulator implanted, and that thereafter she "reported she was doing more bending and lifting than recommended and was able to walk for one mile. . . . She explained that she had good pain control . . ." (Tr. 261, 932). The ALJ noted that in July 2017, Sluyter "followed up with her [primary care provider]. [] On physical examination, she had a normal station and gait, no tenderness, normal strength and tone, and full range of motion." (Tr. 261, 1333-34). When Sluyter appeared at the same doctor's office a few months later for surgical clearance to remove the stimulator, although she had some "tenderness" in her back, she was found to have normal gait, joint movements, and muscle strength and tone. (Tr. 1326).

---

[3] Nor did Sluyter file a reply brief contesting any the Commissioner's arguments on this issue.

12

Finally, as the Commissioner persuasively argues, not only there is no absolute requirement for an ALJ to "seek out a physician's medical opinion where one is not offered," *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015), but an ALJ's RFC determination is not required to be based on a physician's opinion. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) ("[T]o require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability."). Again, Sluyter does not contest these principles or show how any aspect of the RFC the ALJ ultimately adopted is not supported by the substantial evidence discussed by the ALJ in her written opinion.

For all of these reasons, the Court rejects Sluyter's argument that the ALJ failed to properly develop the record.

### 2. *Sluyter is Not Entitled to a Sentence Six Remand*

Sluyter's final argument is that this case should be remanded under sentence six of 42 U.S.C. § 405(g) so that the ALJ can consider the additional evidence she submitted at the Appeals Council level, including evidence from both before the date on which the ALJ issued her written decision, and after that date. (ECF No. 10, PageID.1884-86; Tr. 8-243). Sluyter contends that "[s]pecific records were expected to be made a part of the record, but not all such records were obtained," and that once those records were put before the Appeals Council, it erred in not properly considering them. (ECF No. 10, PageID.1890.) The Court disagrees.

Remand to consider additional evidence is appropriate only when the evidence is new

13

and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Sluyter's argument fails on both fronts. First, she has not shown "good cause" for not presenting the evidence earlier. "Good cause" requires a claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). As this Court has recognized, "'Good cause' is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Richardson*, 2012 WL 4210619, at *4 (quoting *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original). Rather, a plaintiff attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Id.* at *4. Sluyter has not proffered any legitimate reason for her failure to supply the evidence in question. Especially as to the evidence already in existence at the time of the ALJ hearing, the Court notes that the ALJ gave Sluyter multiple opportunities to identify any additional records she believed were pertinent and to have them fully considered. In fact, when the ALJ obtained the 800+ pages of additional records, she wrote to Sluyter – separately with respect to each physician from whom records were obtained – providing her with a copy of the records, asking her if there were any others to be obtained, and giving her the opportunity to address the additional records in writing and/or in person. (Tr. 567-84) ("I have secured additional evidence that I propose to enter into the record. I am enclosing the additional evidence below for your review. . . . You may submit . . . written comments concerning the evidence, . . . any additional records you wish me to consider . . . You may also request a supplemental hearing . . .").

Nor has Sluyter shown that any of the evidence in question is material. In the Social Security context, evidence is considered "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). Sluyter fails to meaningfully analyze the evidence in question; instead of proffering an argument as to how any of the evidence is likely to change the ALJ's analysis, she simply lists the evidence, highlighting various aspects of it. The Court could therefore reasonably find Sluyter to have waived any argument as to the evidence's alleged materiality. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotations omitted)).

However, even examining the evidence against the records on which the ALJ's decision is based shows that Sluyter fails the materiality prong required for a sentence six remand. Most of the records are simply cumulative or duplicative of others addressed by the ALJ in her written decision. For example, many of the records in question reflect Sluyter's own self-reports of pain and other limitations, but the ALJ had similar evidence before her and addressed it in the written decision. (Tr. 605, 671, 676, 692, 706, 875, 991, 1349-51, 1763). Sluyter also references a May 5, 2017 progress note from an appointment at a pain management center, noting that this record references an "inability to stand sit and walk." (Tr. 48). But this document's reference to those limitations merely reflects Sluyter's "subjective" complaints that her pain was limiting her ability to engage in those activities. (*Id.*). This was no different than Sluyter's hearing testimony (Tr. 315-16), which the ALJ reasonably discounted in her written decision based on

15

the other medical evidence discussed therein, as well as Sluyter's activities, which included "[being] able to attend school fulltime, do housecleaning, go swimming, and raise a young child on her own." (Tr. 259, 262). Other records reflect Sluyter being diagnosed with radiculopathy, having positive straight leg raising tests, and receiving spinal injections, but again, these issues were already before the ALJ in other records, and the ALJ addressed most of them head-on in her decision. (Tr. 259-61, 597, 629, 632, 639, 721, 819, 1124, 1411). One of the records advanced by Sluyter references her prior surgeries, but the ALJ already had another record from the same examination, and that record contained the same information as the one Sluyter is now claiming to be "new" and "material." (Tr. 83-85, 1409-12). Finally, Sluyter has not shown how any of the other records submitted to the Appeals Council would call into question the substantial evidence on which the ALJ's decision in this matter is based. *Cutlip*, 25 F.3d at 286.

For all of these reasons, Sluyter failed to show "a reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." *See Sizemore*, 865 F.2d at 711. As such, she has not shown that she is entitled to a remand under sentence six.

### III. CONCLUSION

For the reasons set forth above, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED**, Sluyter's Motion for Summary Judgment **(ECF No. 10)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

Dated: November 13, 2019　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

**NOTICE**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 13, 2019.

                                            s/Eddrey Butts
                                            EDDREY BUTTS
                                            Case Manager